**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

THE FOREIGN CANDY COMPANY,
INC.,

            Plaintiff,

vs.

TROPICAL PARADISE, INC., d/b/a
COOL TROPICS,

            Defendant.

No. C 13-4005-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANT'S
MOTION TO DISMISS**

_____

**TABLE OF CONTENTS**

I.    **INTRODUCTION**...................................................................... 3

    A.    *Factual Background* ...................................................... 3

          1.    *The parties* ........................................................ 4

          2.    *Jurisdictional facts* ...................................... 5

    B.    *Procedural Background* ................................................ 6

          1.    *Foreign Candy's Complaint* .................................. 6

          2.    *Tropical Paradise's Motion To Dismiss*...................... 7

II.    *LEGAL ANALYSIS* .................................................... 8

    A.    *Personal Jurisdiction* ............................................... 8

          1.    *Arguments of the parties*..................................... 8

          2.    *Applicable standards*....................................... 11

               a.    *Rule 12(b)(2) standards*......................... 11

               b.    *Due process requirements* ...................... 12

               c.    *Internet contacts* ................................ 15

          3.    *Analysis* ................................................. 24

               a.    *Nature and quality of contacts* ............... 24

               b.    *The quantity of contacts* ...................... 26

               c.    *The relationship of the contacts with the
                      cause of action*.................................... 28

               d.    *Interest and convenience of the forum*....................... 29

               e.    *"Effects" in this forum* ........................ 30

             *f.*      *"Fair play and substantial justice" in the*
                  *totality of the circumstances* .................................. *31*
       *4.*    *Jurisdictional discovery* ................................................ *32*
             *a.*      *Arguments of the parties* ..................................... *32*
             *b.*      *Analysis* ......................................................... *33*
       *5.*    *Summary* ................................................................... *34*
  *B.*    *Venue* ................................................................................. *34*
       *1.*    *Arguments of the parties* ............................................... *34*
       *2.*    *Analysis* .................................................................... *35*

*III.*    *CONCLUSION* .......................................................................... *36*

In this action by a candy importer against a fruit juice seller, involving federal and state law claims of trademark, trade dress, and copyright infringement and unfair competition, the fruit juice seller's motion to dismiss for lack of personal jurisdiction and improper venue exemplifies the collision between modern conceptions of a "global marketplace" and long-standing constitutional conceptions of due process. The United States Supreme Court recognized, a decade and a half ago, that "[t]he Internet is 'a unique and wholly new medium of worldwide human communication,'"[1] yet commentators and courts have suggested that the analysis of personal jurisdiction based on Internet activity "'should not be different at its most basic level from any other

---

[1] *Reno v. American Civil Liberties Union*, 521 U.S. 844, 850 (1997) (quoting the district court below).

personal jurisdiction case.'"[2]   Here, the fruit juice seller, a New York corporation based in Massachusetts with no business presence in Iowa, asserts that it simply has insufficient contacts with this Iowa forum for the exercise of personal jurisdiction to comport with due process.   The candy importer, on the other hand, asserts that the fruit juice seller has sufficient contacts for the exercise of personal jurisdiction to meet due process requirements based on a link on the fruit juice seller's otherwise passive website to the website of a distributor from whom the fruit juice seller's products can be purchased online and based on a single purchase of the fruit juice seller's products from the distributor's website for shipment to an Iowa customer (the plaintiff's president, chief executive officer (CEO), and owner).

## I.   INTRODUCTION

### A.   Factual Background

Because this case is before me on a motion to dismiss, and no jurisdictional discovery has been authorized or conducted, the factual background is necessarily drawn—at least in the first instance—from the factual allegations in the plaintiff's Complaint (docket no. 1).   On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, however, I may also consider affidavits and exhibits presented with the motion and in opposition to it.   *See Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 474-75 (8th Cir. 2012).   Where appropriate or necessary, I have amplified the facts alleged in the Complaint with facts from such additional sources.   For present purposes, the focus is on facts relevant to personal jurisdiction and venue, rather than all facts giving rise to the parties' dispute.

---

[2] *See, e.g., Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 226-27 (5th Cir. 2012) (quoting 4A CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. § 1073.1, at 327 (3d ed. 2002)).

### 1. *The parties*

The Foreign Candy Company (Foreign Candy), the plaintiff in this action, alleges that it is an Iowa corporation with its principal place of business in Hull, Iowa, and that it is engaged in the business of importing, distributing, and selling candy products. Foreign Candy alleges that it is the exclusive owner of a number of registered trademarks, including the following: "RIPS," Registration No. 2,848,847 (the '847 Mark); "LET 'ER RIP," Registration No. 2,738,693 (the '693 Mark); and "RIP ROLLS," Registration No. 2,763,991 (the '991 Mark). Foreign Candy describes these marks collectively as "the RIP Marks." *See* Complaint, Exhibits A-C. Foreign Candy also alleges that it is the owner of the trade dress (Foreign Candy Trade Dress) embodied in the packaging, label, and the like, used in connection with its RIPS Products. *See* Complaint, Exhibit E. Further, Foreign Candy alleges that it has applied for and been issued copyright certificates of registration for various embodiments of its packaging (Foreign Candy's Packaging) used in connection with the RIPS Products, consisting of certificates of registration bearing Registration Nos. TX 7-446-536, TX 7-452-638, TX 7-451-463, and TX 7-452-521, with effective dates of September 7, 2011, September 8, 2011, September 9, 2011, and September 15, 2011, respectively.

Tropical Paradise, Inc., doing business as Cool Tropics (Tropical Paradise), the defendant in this action, alleges in its Motion To Dismiss (docket no. 5) that it is a New York corporation headquartered in Bedford, Massachusetts. Foreign Candy alleges, and Tropical Paradise has not yet disputed, that Tropical Paradise sells, offers for sale, distributes, and advertises fruit juice packs available in a variety of fruit flavors under a Cool Tropics brand name (the Cool Tropics Products). Foreign Candy alleges that Tropical Paradise has adopted, used, and continues to use the term "RIPS" and the

phrase "LET IT RIP!," Complaint, Exhibit D, in connection with the sale, offering for sale, distribution, and advertising of the Cool Tropics Products.

The gravamen of Foreign Candy's trademark infringement claims is its allegation that, from about 2009 to the present, Tropical Paradise has offered and continues to offer for sale, through its dealers and distributors, the Cool Tropics Products that contain marks identical to or confusingly similar to Foreign Candy's RIP Marks, but that those products are not and were not distributed by Foreign Candy, the owner of the RIP Marks. Foreign Candy also alleges that Tropical Paradise has adopted, used, and continues to use, in intrastate and interstate commerce, a packaging and trade dress for its Cool Tropics Products (the Cool Tropics Trade Dress) that creates an overall impression that is similar to, identical to, or confusingly similar to Foreign Candy's Trade Dress, including but not limited to, the font, coloring, and placement of "RIPS" and "LET IT RIP!" on the packaging. Finally, for present purposes, Foreign Candy alleges that Tropical Paradise has knowingly and willfully directly copied Foreign Candy's Packaging for the specific purpose of infringing Foreign Candy's copyrights in furtherance of its business objectives, specifically, selling its Cool Tropics Products.

### 2.      *Jurisdictional facts*

Foreign Candy alleges in its Complaint that Tropical Paradise operates and conducts business in the Northern District of Iowa and has and is conducting business and has committed acts of infringement of Foreign Candy's RIP Marks in this judicial district. Tropical Paradise disputes these allegations and avers, instead, that it is not registered to do business in Iowa; has no registered agent for service of process in Iowa; has no offices in Iowa; does not rent or own real estate in Iowa; and has no customers or employees in the state. Indeed, Tropical Paradise avers that it has not sold even a single item in the State of Iowa in at least the last ten years. Tropical

Paradise also contends that none of the allegedly infringing or wrongful conduct at issue in Foreign Candy's Complaint occurred in Iowa, and Foreign Candy has not even alleged that it did.

In its Response (docket no. 13) to Tropical Paradise's Motion To Dismiss, Foreign Candy avers that, on Tropical Paradise's website (www.cool-tropics.com), Tropical Paradise advertises the Cool Tropics Products as "NOW AVAILABLE FOR PURCHASE!" with a direct link to an online retailer's website (www.coffeecow.com), operated by CofeeCow.com. Foreign Candy alleges that CoffeeCow.com has been and continues to be a distributor of the Cool Tropics Products, and that customers may direct that the Cool Tropics Products purchased on CoffeeCow.com's website be shipped to Iowa by selecting "Iowa" from a drop-down menu listing U.S. states. Indeed, Foreign Candy's president, CEO, and owner, Peter W. De Yager, avers that, on or about November 12, 2012, before Foreign Candy's Complaint was filed on January 10, 2013, he clicked the link on the Tropical Paradise website to the online retailer, proceeded through the required steps, and purchased and had shipped to his home in Hull, Iowa, and later received, various Cool Tropics RIPS Products. *See* Response, Exhibit C. In its reply, Tropical Paradise asserts that its website is not interactive, but simply provides a link to an unaffiliated third party's website to purchase Cool Tropics Products.

### B.    *Procedural Background*

#### 1.    *Foreign Candy's Complaint*

Beginning in about 2009, the parties engaged in unsuccessful attempts to resolve their disputes, involving various exchanges of correspondence between their respective attorneys. On January 10, 2013, Foreign Candy filed its Complaint (docket no. 1) initiating this action for trademark infringement, trade dress infringement, false

6

designation of origin, false representation and description, and other unfair competitive conduct by Tropical Paradise, in violation of the Lanham Act, 15 U.S.C. §1051 *et seq.*; Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§1114 and 1125(a), respectively; the Iowa Trademark Act, Chapter 548 (Iowa Code) and Iowa unfair competition at common law; copyright infringement in violation of the Copyright Act, 17 U. S. C. § 101 *et seq.*; and common law trademark and other rights. Somewhat more specifically, in **Count I** of its Complaint, Foreign Candy alleges a federal trademark infringement claim pursuant to 15 U.S.C. § 1114; in **Count II**, Foreign Candy alleges a false designation of origin claim pursuant to 15 U.S.C. § 1125(a); in **Count III**, Foreign Candy alleges an infringement of trade dress claim pursuant to 15 U.S.C. § 1125; in **Count IV**, Foreign Candy alleges a trademark violation and unfair competition claim under Iowa law; in **Count V**, Foreign Candy alleges a common-law trademark infringement claim; and in **Count VI**, Foreign Candy alleges a copyright infringement claim pursuant to 17 U.S.C. § 501.

### 2. *Tropical Paradise's Motion To Dismiss*

On April 11, 2013, Tropical Paradise filed a pre-answer Motion To Dismiss (docket no. 5), seeking dismissal of Foreign Candy's Complaint for lack of personal jurisdiction and improper venue, pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, respectively, accompanied by an affidavit of Fadi S. Massabni, the CEO of Tropical Paradise. On May 13, 2013, Foreign Candy filed its Response To Motion To Dismiss Complaint (docket no. 13), accompanied by three exhibits, consisting of "screen shots" from www.cool-tropics.com, www.coffeecow.com, and an affidavit by Mr. De Yager, accompanied by its own exhibit, consisting of a packing slip for Cool Tropics Products that Mr. De Yager ordered online from www.coffeecow.com and had shipped to his address in Iowa. Foreign Candy's brief in support of its Response included a request that, if I determine

7

that Foreign Candy has not made a *prima facie* showing of personal jurisdiction over Tropical Paradise, I grant Foreign Candy the opportunity to conduct jurisdictional discovery, because the facts known to date give rise to additional unknown facts that are solely under the control of Tropical Paradise and are otherwise difficult, if not impossible, to determine without formal discovery. On May 30, 2013, Tropical Paradise filed its Reply Brief In Support Of Motion To Dismiss (docket no. 19), reiterating that there is no basis for the exercise of personal jurisdiction over it and asserting that jurisdictional discovery is not appropriate in this case.

No party requested oral arguments on Tropical Paradise's Motion To Dismiss in the manner required by applicable local rules, and I do not find that oral arguments are necessary, in light of the sufficiency of the parties' briefing and other written submissions. Therefore, I will deem the Motion To Dismiss fully submitted on the parties' written submissions.

## II. LEGAL ANALYSIS
### A. Personal Jurisdiction

Tropical Paradise seeks dismissal of Foreign Candy's Complaint, first, on the ground that this court lacks personal jurisdiction over Tropical Paradise. Foreign Candy disputes that contention.

### 1. Arguments of the parties

Tropical Paradise asserts that it lacks sufficient "minimum contacts" with Iowa to support "general" jurisdiction, and Foreign Candy does not argue otherwise. Tropical Paradise also asserts that it lacks sufficient "minimum contacts," from which any of Foreign Candy's claims arise, for the exercise of "specific" jurisdiction to be proper, a contention that Foreign Candy does dispute. More specifically, Tropical Paradise argues that it has not engaged in any business transaction in Iowa for at least

8

ten years. It also argues that, while it maintains a general information website, that website is not specifically directed toward residents of Iowa, but is a "passive" website that does not establish sufficient "minimum contacts" to create personal jurisdiction over Tropical Paradise in this state. Indeed, Tropical Paradise argues that these facts make clear that it in no way "purposefully availed" itself of the benefits of doing business in Iowa, such that it could expect to be haled into court here, that forcing it to litigate in Iowa would offend traditional notions of fair play and substantial justice, and that the exercise of personal jurisdiction would, consequently, violate due process.

In contrast, Foreign Candy contends that consideration of the pertinent factors demonstrates that exercising specific personal jurisdiction over Tropical Paradise would comport with due process. Foreign Candy argues that the nature and quality of Tropical Paradise's contacts with Iowa through its website are sufficient, because that website has a link to a distributor's website, where the Cool Tropics Products can be purchased, raising it above a merely "passive" website into an "active" website. Foreign Candy asserts that other courts have found that sales through a website that included the forum as a potential shipping destination, like Tropical Paradise's distributor's website does, were sufficient for the defendant to reasonably anticipate being haled into the forum. Indeed, Foreign Candy contends that its CEO made an online purchase and had Cool Tropics Products shipped to Iowa. Foreign Candy also argues that courts within this Circuit have recognized that a single purchase by a plaintiff's counsel in the forum was sufficient contact with the forum for personal jurisdiction purposes, although Foreign Candy does not cite any decisions so holding by any such courts. Foreign Candy argues, next, that there is a strong relationship between its causes of action and Tropical Paradise's contacts, because the contacts through the website involve the sale of infringing products, so that those sales directly cause the alleged harm to Foreign Candy, a forum resident. Foreign Candy also argues

9

that the interest of the forum state and the convenience of the parties also weigh in favor of personal jurisdiction here over Tropical Paradise, because Iowa has a significant interest in giving an Iowa resident a convenient forum to adjudicate injuries by out-of-state actors, and Tropical Paradise has not asserted what alternative forum might be more appropriate.

In addition, Foreign Candy argues that the "effects" test warrants the exercise of personal jurisdiction over Tropical Paradise in this case, because Tropical Paradise has continued infringing activity even after notice from Foreign Candy, from as early as 2009, that Tropical Paradise's activities were causing effects in Iowa by injuring an Iowa resident. Indeed, Foreign Candy asserts that, because Tropical Paradise had such notice, it knew that its continuing infringing activity would have a potentially devastating impact on Foreign Candy in Iowa.

In reply, Tropical Paradise reiterates that its website is merely "passive," so that it cannot be the basis for the exercise of personal jurisdiction in Iowa. Tropical Paradise contends that its website is not even a "middle ground" website, because it does not allow for the direct purchase of its products. Rather, Tropical Paradise contends, any purchase was from another *independent* online retailer, although that retailer could be reached by a link from Tropical Paradise's website. Tropical Paradise argues that its website does not provide for any other interaction or exchange of information between customers and Tropical Paradise's website, but only allows visitors to provide contact information to the company so that the company may contact them via telephone or e-mail. Tropical Paradise attempts to distinguish cases on which Foreign Candy relies, while arguing that, contrary to Foreign Candy's contentions, courts have consistently found that a website like Tropical Paradise's is not enough for personal jurisdiction. Tropical Paradise also argues that Foreign Candy's reliance on the "effects" test is unavailing, because the Eighth Circuit Court of Appeals construes

10

that test narrowly, as only an additional factor in the personal jurisdiction analysis, not as the basis for personal jurisdiction when traditional contacts are absent.

### 2. *Applicable standards*

It does not appear that the Federal Circuit Court of Appeals has ever held that personal jurisdiction in a copyright or trademark case is a matter governed by Federal Circuit law rather than the law of the regional circuit. Therefore, I will apply Eighth Circuit standards to the personal jurisdiction issue presented here.

### a. *Rule 12(b)(2) standards*

As the Eighth Circuit Court of Appeals recently explained, "Personal jurisdiction over a defendant represents the power of a court to enter 'a valid judgment imposing a personal obligation or duty in favor of the plaintiff.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592-93 (8th Cir. 2011) (quoting *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 91 (1978)). Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a pre-answer motion to dismiss for "lack of personal jurisdiction." FED. R. CIV. P. 12(b)(2).

As the Eighth Circuit Court of Appeals recently explained,

> "To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir.) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)), *cert. denied*, ––– U.S. ––––, 131 S.Ct. 472, 178 L.Ed.2d 289 (2010). "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Id.* Its "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.* (internal quotation marks omitted).

11

*Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 474-75 (8th Cir. 2012); *Pangaea, Inc. v. Flying Burrito, L.L.C.*, 647 F.3d 741, 744-45 (8th Cir. 2011) ("Where, as here, 'the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.'" (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991), with internal citations omitted)).

Although I may consider affidavits and other matters outside of the pleadings on a Rule 12(b)(2) motion, the pleader's burden, in the absence of an evidentiary hearing, is only to make a "minimal" *prima facie* showing of personal jurisdiction, and I "must view the evidence in the light most favorable to the [pleader] and resolve all factual conflicts in its favor in deciding whether the [pleader] has made the requisite showing." *K-V Pharm. Co. v. Uriach & CIA, S.A.*, 648 F.3d 588, 581-82 (8th Cir. 2011). Notwithstanding that facts are viewed in the light most favorable to the pleader, "'[t]he party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Viasystems, Inc.*, 646 F.3d at 592 (quoting *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003)). The Eighth Circuit Court of Appeals reviews *de novo* orders granting dismissals pursuant to Rule 12(b)(2). *Johnson v. Arden*, 614 F.3d 785, 793 (8th Cir. 2010).

### b. *Due process requirements*

The exercise of personal jurisdiction is only permissible when it comports with due process. *See, e.g., K-V Pharm. Co.*, 646 F.3d at 592.[3] "Due process requires that

---

[3] It is not clear whether or not the reach of a state's long-arm statute is relevant to the personal jurisdiction inquiry in an action against a non-resident defendant that is *not* based on diversity of citizenship. *Cf. Dairy Farmers of Am., Inc.*, 702 F.3d at 475

a defendant have certain 'minimum contacts' with the forum state for personal jurisdiction to be exercised." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). More specifically,

> Contacts with the forum state must be sufficient that requiring a party to defend an action would not "offend traditional notions of fair play and substantial justice." [*International Shoe Co.*, 326 U.S.] at 316, 66 S.Ct. 154 (internal quotation marks and citation omitted). "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal citations omitted).
>
> We developed a five-factor test to evaluate whether a defendant's actions are sufficient to support personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the

---

("'Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment.'" (quoting *Viasystems*, 646 F.3d at 593)); *see also Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1388-98 & n.2 (8th Cir. 1991) (noting that, even though subject matter jurisdiction in the case was predicated on a "federal question," so that due process for personal jurisdiction purposes was examined in light of the Fifth Amendment rather than the Fourteenth Amendment, and Congress had authorized nationwide service of process in federal question cases, the court nevertheless applied "minimum contacts" analysis and considered the reach of the state's long-arm statute). Even if the reach of the state's long-arm statute is relevant, however, "[b]ecause Iowa's long-arm statute 'expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution,' *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005), [the federal court's] inquiry is limited to whether the exercise of personal jurisdiction comports with due process." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010).

> relationship of those contacts with the cause of action;
> (4) [the state's] interest in providing a forum for its
> residents; and (5) the convenience or inconvenience to the
> parties. *See, e.g., Precision Const. Co. v. J.A. Slattery Co.,
> Inc.*, 765 F.2d 114, 118 (8th Cir. 1985) (noting that the first
> three factors are of primary importance and the last two of
> secondary importance).

*Myers*, 689 F.3d at 911.

Furthermore, although "'[p]ersonal jurisdiction can be specific or general,'" *Dairy Farmers of Am., Inc.*, 702 F.3d at 476 (quoting *Viasystems*, 646 F.3d at 593), only "specific" personal jurisdiction is at issue here. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state. . . .'" *Id.* (quoting *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1091 (8th Cir. 2008)). In the five-factor test, "[t]he third factor distinguishes between specific and general [personal] jurisdiction." *Myers*, 689 F.3d at 911. This is so, because "[s]pecific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant." *Id.* at 912.

The Eighth Circuit Court of Appeals recently clarified that it does *not* adhere to a "proximate cause standard" for the required connection between the defendant's contacts with the forum and the plaintiff's cause of action. *See id.*

> Rather, we have said specific jurisdiction is warranted when
> the defendant purposely directs its activities at the forum
> state and the litigation "result[s] from injuries … relating to
> [the defendant's] activities [in the forum state.]" *Steinbuch
> v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). We have also
> emphasized the need to consider "the totality of the
> circumstances in deciding whether personal jurisdiction
> exists[,]" *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648
> F.3d 588, 592–93 (8th Cir. 2011) (citing *Johnson*, 614 F.3d
> at 794). This stance is consistent with other circuits which
> have focused on the need to adopt a flexible approach when
> construing the "relate to" aspect of the Supreme Court's

14

> standard. *See Nowak [v. Tak How Invs., Ltd.*, 94 F.3d 708,] 716 [(1st Cir. 1996)] ("By this approach, we intend to emphasize the importance of proximate causation, but to allow a slight loosening of that standard when circumstances dictate. We think such flexibility is necessary in the jurisdictional inquiry: relatedness cannot merely be reduced to one tort concept for all circumstances.").

*Myers*, 689 F.3d at 913.

### c.    *Internet contacts*

The primary basis on which Foreign Candy asserts that specific personal jurisdiction over Tropical Paradise is appropriate is Tropical Paradise's purported Internet contacts with this forum. The Eighth Circuit Court of Appeals has considered on only a few occasions when contacts via a website will satisfy due process. In its earliest significant discussion on the issue, the Eighth Circuit Court of Appeals noted,

> The great majority of these cases have adopted the analytical framework of *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997). In *Zippo*—also a case of specific jurisdiction—the court examined the few cases that had previously addressed the issue of whether a Web site could provide sufficient contacts for specific personal jurisdiction. It applied the results of these cases to the traditional personal jurisdiction analytical framework, noting that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." 952 F.Supp. at 1124. In order to measure the nature and quality of the commercial activity, the court created a "sliding scale" to measure the likelihood of personal jurisdiction. It noted:
>
> > At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and

15

repeated transmission of computer files over the
Internet, personal jurisdiction is proper. At the
opposite end are situations where a defendant has
simply posted information on an Internet Web site
which is accessible to users in foreign jurisdictions. A
passive Web site that does little more than make
information available to those who are interested in it
is not grounds for the exercise [of] personal
jurisdiction. The middle ground is occupied by
interactive Web sites where a user can exchange
information with the host computer. In these cases,
the exercise of jurisdiction is determined by
examining the level of interactivity and commercial
nature of the exchange of information that occurs on
the Web site.

*Id*. (citations omitted).

*Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710-11 (8th Cir. 2003). The court
opined, "We agree with our sister circuits that the *Zippo* model is an appropriate
approach in cases of specific jurisdiction—i.e., ones in which we need only find
'minimum contacts.'" *Id*. at 711. Although the court recognized that *Zippo* was
helpful to assessing the nature and quality of commercial contacts via a website, the
court did not treat *Zippo* as the complete test of specific personal jurisdiction in cases
based on Internet contacts. Instead, it noted that "we have long held that the 'nature
and quality' of contacts is only one factor to consider," and that it "consider[s] a
variety of factors—depending on the circumstances—in a personal jurisdiction
analysis," citing the five-factor test. *Id*. However, because "general" personal
jurisdiction was asserted in the case before it, the court in *Lakin* found the *Zippo* model
less helpful. *Id*.

Subsequently, the court considered internet contacts in cases that did involve
assertions of "specific" personal jurisdiction. In *Johnson v. Arden*, 614 F.3d 785 (8th
Cir. 2010), the court again recognized the applicability of the *Zippo* sliding scale for

16

determination of specific personal jurisdiction based on internet activity. 614 F.3d at

796. In that case, as to the defamation claim, the court concluded,

> The www.ComplaintBoards.com site lands on the "mere posting" end of the scale. Although InMotion represents www.ComplaintsBoard.com as an "interactive" website, users may actually only post information. There is no interaction between users and a host computer; the site merely makes information available to other people. *The website's accessibility in Missouri alone is insufficient to confer personal jurisdiction.*

*Johnson*, 614 F.3d at 796 (emphasis added). As to a federal Lanham Act claim, the

court concluded,

> The Johnsons argue that Heineman sells cats and kittens throughout the United States, including in the State of Missouri via advertising on www.BoutiqueKittens.com, thus creating specific personal jurisdiction. However, under *Zippo*, whether specific personal jurisdiction could be conferred on the basis of an interactive website depends not just on the nature of the website but also on evidence that individuals in the forum state accessed the website in doing business with the defendant. *Zippo*, 952 F.Supp. at 1125–26. Although www.BoutiqueKittens.com may be characterized as interactive, there is no evidence in the record that Heineman engaged in any transaction or exchange of information with a Missouri resident via www.BoutiqueKittens.com, or that a Missouri resident ever accessed the website. *We decline to confer personal jurisdiction based on only the possibility that a Missouri resident had contact with Heineman through www.BoutiqueKittens.com.*

*Johnson*, 614 F.3d at 797 (emphasis added). Similarly, in *Pangaea, Inc. v. Flying*

*Burrito, L.L.C.*, 647 F.3d 741 (8th Cir. 2011), the Eighth Circuit Court of Appeals

rejected the contention that merely maintaining a website that could be viewed by

customers in the forum was insufficient to confer specific personal jurisdiction over an out-of-state defendant in a trademark infringement action. 647 F.3d at 747.

Another decision of the Eighth Circuit Court of Appeals, *Viasystems, Inc. v. EMB-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589 (8th Cir. 2011), involved somewhat different circumstances, in that the plaintiff asserted general personal jurisdiction over a defendant, not specific personal jurisdiction, on the basis of web activity of the defendant's purported agent, but the decision is instructive, nevertheless. In *Viasystems*, the court held,

> Even if [certain] scattered marketing statements could support an inference that the two companies have a legally recognized agency relationship, St. Georgen cannot be held responsible for the statements on www.ebm-papst.com for the simple reason that this website is owned and operated not by St. Georgen, but by its corporate parent, ebm-papst Mulfingen GmbH & Co. KG ("Mulfingen").

*Viasystems*, 646 F.3d at 596. Thus, the Eighth Circuit Court of Appeals has recognized the distinction between web activity of a defendant and web activity of a third party, which may benefit or relate to the defendant, where the third party is not owned or operated by the defendant.

Other courts and commentators have applied a traditional three-factor test of personal jurisdiction even in cases involving Internet contacts, although some of those courts inform their analysis of those traditional factors with concerns raised in *Zippo*, because such a traditional test "'seems fully applicable to jurisdiction questions generated by new technologies.'" *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 (5th Cir. 2012) (quoting 4A CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. § 1073.1, at 334 (3d ed. 2002)). That three-factor test asks the following questions: "'(1) Did the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts? (2) Did the defendant purposely direct its

18

activities toward the forum state or purposely avail itself of the privilege of conducting activities therein? (3) Would the exercise of personal jurisdiction over the defendant be reasonable and fair?'" *Id.* (again quoting 4A CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. § 1073.1, at 334 (3d ed. 2002)); *see also Arpaio v. Dupre*, 2013 WL 2150869, *4 (3d Cir. May 20, 2013) (unpublished op.) (formulating the test, in a case in which personal jurisdiction was based on Internet contacts, as the typical three-step test of specific personal jurisdiction: "(1) the defendant must have purposefully directed his activities to the forum; (2) the plaintiff's claim must arise out of or relate to at least one of those specific activities; and (3) the assertion of jurisdiction must otherwise comport with fair play and substantial justice" (citing *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008)); *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 427-33 (7th Cir. 2010) (examining the sufficiency of Internet contacts in terms of the nature of the contacts, the relationship between the contacts and the claims, and fairness). These three factors address essentially the same concerns as the traditional five-factor test for personal jurisdiction in the Eighth Circuit. *See Myers*, 689 F.3d at 911.

Using the three-factor test, the Fifth Circuit Court of Appeals has explained,

> "Website interactivity is important only insofar as it reflects commercial activity, and then only insofar as that commercial activity demonstrates purposeful targeting of residents of the forum state or purposeful availment of the benefits or privileges of the forum state." *Shamsuddin v. Vitamin Research Prods.*, 346 F.Supp.2d 804, 813 (D. Md. 2004). A corporation's sales to forum residents must be more than "'isolated'" occurrences for the assertion of jurisdiction to satisfy the requirements of due process. *Burger King [Corp. v. Rudzewicz]*, 471 U.S. [462,] 475 n.18, 105 S.Ct. 2174 [(1985)] (citation omitted).

19

*Pervasive Software, Inc.*, 688 F.3d at 228. Similarly, the Seventh Circuit Court of Appeals has explained,

> One conclusion we might draw from [the fact that internet sales and services can be provided to customers anywhere] is that a physical geographical nexus is simply less important in cases where the alleged harm occurred over the Internet. Such a conclusion would not necessarily be inconsistent with due process. After all, the geographical relationship between claim and contacts is only one facet of the constitutional inquiry. *The plaintiff must still prove that the defendant had constitutionally sufficient contacts with the forum and that the defendant's contacts were temporally and substantively related to the lawsuit.* Without that showing, the mere fact that the defendant allegedly caused harm by conducting business or advertising over the Internet is not adequate to establish jurisdiction in the plaintiff's chosen forum state.

*uBid, Inc.*, 623 F.3d at 431 (citations omitted; emphasis added); *see id.* at n.3 (explaining, "This is true even if the website is highly interactive," using the *Zippo* factor considering the degree of interactivity as relevant, but not dispositive, and rejecting the use of "a separate test for Internet-based contacts when the traditional analysis of the 'nature, quality, and quantity of contacts, as well as their relation to the forum state,' remains up to this more modern task.")

Applying a test based on traditional factors, the Third Circuit Court of Appeals recognized that, as a general matter, "the sale of products on a *third-party website* simply cannot support the exercise of personal jurisdiction," because it does not demonstrate *the defendant's* "purposeful availment" of the privilege of doing business in the forum that is required by due process. *Arpaio*, 2013 WL 2150869 at *5 (emphasis added). So, too, the Federal Circuit Court of Appeals rejected the exercise of personal jurisdiction over a defendant based on sales from or the availability of its products on a third-party's website:

20

Trintec refers to the availability of Pedre products on non-Pedre websites, but those sites would support jurisdiction only if Pedre had some responsibility for the third party's advertising of Pedre products on non-Pedre sites. *See, e.g., Jung v. Ass'n of Am. Med. Colls.*, 300 F.Supp.2d 119, 132 n. 5 (D.D.C.2004) (distinguishing cases where personal jurisdiction is based upon defendant's activities on its own website from situation where third party's website was used); *GTE [New Media Servs. Inc. v. BellSouth Corp.]*, 199 F.3d [1343,] 1352 [(D.C. Cir. 2000)] (indicating the importance of "know[ing] for certain which defendants own and operate which websites" in determining jurisdiction). Although some of the non-Pedre websites contain hyperlinks to Pedre.com, it is unclear exactly how much, if any, control Pedre has over the contents of these third-party sites.

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005). If a hyperlink *from* a third-party vendor's website *to* the defendant's website is insufficient to establish personal jurisdiction without a demonstration that the defendant controlled the third-party, then, likewise, the mere existence of a hyperlink *from* a defendant's otherwise "passive" website *to* a third-party vendor's website where the defendant's products could be purchased also would not demonstrate, by itself, that the defendant controls the third-party sufficiently for sales from the third-party's website to constitute "contacts" by the defendant. Indeed, the federal district courts to consider that precise issue have concluded that such a hyperlink to a third-party vendor's website is insufficient to establish personal jurisdiction over a defendant.[4]

---

[4] *See, e.g., Celorio v. Goole, Inc.*, 872 F. Supp. 2d 1327, 1333 (N.D. Fla. 2012) ("While [customers] can click on links that take them [from the defendant's website] to other websites to purchase books, this is insufficient to support minimum contacts [by the defendant]."); *Roblor Mktg. Group, Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1156-57 (S.D. Fla. 2009) (holding that a website that passively advertises the defendant's products with links to resellers and distributors of the

The cases cited by Foreign Candy are not to the contrary. In *3M Co. v Mohan*, Civil No. 09-1413 (ADM/FLN), 2010 WL 786519 (D. Minn. March 5, 2010), the district court concluded as follows:

> Mohan clearly did business over the Internet when he created a website that allowed customers to 1) browse products online, 2) select items to purchase, 3) direct that the products be shipped to Minnesota by selecting Minnesota from a drop-down menu listing U.S. states, and 4) pay for the products online via a credit card. (Schultz Aff. Exs. 2-3.)

---

products, where none of the resellers or distributors were located in the forum, did not establish sufficient contacts "specifically targeting" forum residents); *1st Tech., L.L.C. v. Digital Gaming Solutions, S.A.*, No. 4:08 CV 586 DDN, 2009 WL 879463, *5 (E.D. Mo. March 30, 2009) (holding that reliance on hyperlinks and attributes of third-party websites was "unavailing" to establish personal jurisdiction); *Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1347 (M.D. Fla. 2007) ("[T]he fact that the website of a company that sells products in Florida can be reached via a link on Defendants' website is too narrow a thread on which to find meaningful 'contact' for the purposes of due process."); *Simplicity, Inc. v. MTS Prods., Inc.*, No. 05-3008, 2006 WL 924993, *7 (E.D. Pa. April 6, 2006) ("MTS's website falls short of a commercially interactive site for which personal jurisdiction is proper because it does not allow customers to purchase products online—it merely provides the names and website links to retailers, etailers and specialty stores which sell its products."); *David White Instruments, L.L.C. v. TLZ, Inc.*, No. 02 C 7156, 2003 WL 21148224, *6 (N.D. Ill. May 16, 2003) (holding that, where the defendant's website was not interactive, because visitors could not purchase allegedly infringing items there, but had to visit an unaffiliated website, albeit one reached by a hyperlink from the defendant's website, to purchase allegedly infringing products, there was no allegation that reasonably supported the inference that the defendant directed its activity at forum residents); *but see Arriaga v. Imperial Palace, Inc.*, 252 F. Supp. 2d 380, 387 (S.D. Tex. 2003) (the fact that the defendant's reservations were handled through a third-party website was "irrelevant," where the defendant "created the 'face' of the web site such that a user would reasonably believe he is forwarding his reservation and credit card information directly to [the defendant], for use in securing a room at the [defendant's] hotel").

22

*Mohan.*, 2010 WL 786519 at *2. Thus, in the first instance, it was the defendant's interactive sales from his *own* website to Minnesota residents that were sufficient contacts with the forum to establish personal jurisdiction. Similarly, this was the only basis on which the courts in *3M Co. v. Icuiti Corp.*, Civil No. 05-2945 ADM/RLE, 2006 WL 1579816, *2 (D. Minn. June 2006), and *Multi-Tech Systems, Inc. v. VocalTec Communications, Inc.*, 122 F. Supp. 2d 1046, 1051 (D. Minn. 2000), also cited by Foreign Candy, found that the defendants' contacts with the forum were sufficient to establish specific personal jurisdiction. Neither *Icuiti* or *Multi-Tech Systems* involved any sales from third-party websites.

In *Mohan*, the district court also observed,

> Further supporting a finding of personal jurisdiction, Mohan also does significant business over the Internet via the commercial interactive website ebay.com (over 2,100 transactions) and the national website Amazon.com—both of which include Minnesota as a shipping destination for purchases.

*Mohan*, 2010 WL 786519 at *3. There was no evidence in that case, however, that either ebay.com or Amazon.com, rather than the defendant, was acting as the actual vendor for the sales from those "commercial interactive websites"—that is, that they were acting as a retailer or distributor of the defendant's products—where ebay.com serves as an "auction" website for products offered by other vendors, but is not itself the vendor, and Amazon.com facilitates sales in which the actual vendor may be either Amazon or another entity using Amazon.com as a "sales forum." Internet sales on an "auction" or "sales forum" website may properly be considered contacts by the actual vendor, for essentially the same reasons that sales from the actual vendor's *own* website may be considered contacts by the actual vendor. *See, e.g., Lakin*, 348 F.3d at 710-11. However, decisions finding such Internet sales were contacts by the actual vendor do

not stand for or support the notion that every sale from a "third-party" website is necessarily a contact by the product manufacturer.

### 3. *Analysis*

#### a. *Nature and quality of contacts*

Here, as to "the nature and quality of the [defendant's] contacts with the forum state," the first factor in the five-factor test of personal jurisdiction in this Circuit, *see Myers*, 689 F.3d at 911, the mere fact that Tropical Paradise's website is accessible in Iowa or that it provides the possibility that an Iowa resident might have contact with Tropical Paradise (by leaving contact information) is not sufficient, alone, to confer personal jurisdiction. *See Johnson*, 614 F.3d at 796-97; *see also Pangaea, Inc.*, 647 F.3d at 747. Indeed, Tropical Paradise's website falls at the "passive" end of the *Zippo* sliding scale, in terms of the nature and quality of the commercial activity it permits, because it does not allow a visitor to enter into a contract or to make a purchase, or even allow for an exchange of information with the host computer, but does little more than allow Tropical Paradise to post information, even if it allows visitors to leave contact information (a one-way transfer of information, not an exchange) and is accessible to visitors from a foreign jurisdiction. *Lakin*, 348 F.3d at 710 (quoting the formulation of the "sliding scale" in *Zippo*, 952 F. Supp. 2d at 1124). The Eighth Circuit Court of Appeals has also recognized the difference between web activity of a defendant (here, Tropical Paradise) and web activity of a third-party vendor of the defendant's products (here, CoffeeCow.com), where the third-party vendor is not owned or operated by the defendant. *Viasystems*, 646 F.3d at 596; *accord Arpaio*, 2013 WL 2140869 at *5 ("[T]he sale of products on a third-party website simply cannot support the exercise of personal jurisdiction," because it does not demonstrate the defendant's "purposeful availment" of the privilege of doing business in the forum required by due process). There is no evidence here of any ownership or operation of

24

CoffeeCow.com's website by Tropical Paradise and, indeed, the only evidence is that CoffeeCow.com is not affiliated in any way with Tropical Paradise. *See* Defendant's Reply (docket no. 19), Second Affidavit Of Fadi S. Massabni, ¶ 8 ("CoffeeCow is not an affiliate of Tropical Paradise.").

There is also no evidence here—from the "screen shots" provided by Foreign Candy—that Tropical Paradise "created the 'face' of [CoffeeCow.com's] website such that a user would reasonably believe" that the user was actually making a purchase from Tropical Paradise itself. *Compare Arriaga v. Imperial Palace, Inc.*, 252 F. Supp. 2d 380, 387 (S.D. Tex. 2003) (finding personal jurisdiction was proper against a defendant based on contacts through a third-party's hotel reservations website, because the defendant "created the 'face' of the web site such that a user would reasonably believe he is forwarding his reservation and credit card information directly to [the defendant], for use in securing a room at the [defendant's] hotel"). Furthermore, the overwhelming weight of authority is that the existence of a hyperlink from Tropical Paradise's website to CoffeeCow.com—even where the hyperlink appears under a banner or text indicating that Tropical Paradise's Cool Tropics Products are "NOW AVAILABLE FOR PURCHASE!"—does not establish that Internet sales of Tropical Paradise's product from the third-party's website constitute contacts *by Tropical Paradise* with this forum. *Cf. Trintec Indus., Inc.*, 395 F.3d at 1281 (rejecting the sufficiency of hyperlinks from a retailers' websites to a manufacturer's website to establish contacts by the manufacturer, where the manufacturer had no control over the contents of the third-parties' websites); *see also, supra,* n.4 (citing district court decisions expressly rejecting the proposition that hyperlinks from a defendant's website to the websites of retailers where the defendant's products could be purchased establish sufficient contacts by the manufacturer); *and compare Mahon*, 2010 WL 786519 at *3

(holding that a defendant's sales through ebay.com and Amazon.com were contacts by the defendant relevant to personal jurisdiction).

Thus, even viewing the facts in the light most favorable to Foreign Candy, Foreign Candy has failed to meet its "minimal" burden of proof to show that this factor weighs in favor of the exercise of personal jurisdiction over Tropical Paradise in this forum, *see K-V Pharm. Co.*, 648 F.3d at 581-82 (explaining the burden of proof and the court's view of the evidence when facts are controverted on a Rule 12(b)(2) motion, but no evidentiary hearing is held). To the contrary, this factor weighs heavily against the exercise of personal jurisdiction.

### b.     *The quantity of contacts*

The second factor in the five-factor test of personal jurisdiction in this Circuit is "the quantity of those contacts with the forum state." *Myers*, 689 F.3d at 911. As to this factor, Foreign Candy contends that "courts within this Circuit have recognized that a single purchase by plaintiff's counsel in the forum was a sufficient quantity of contacts with the forum." Plaintiff's Response Brief (docket no. 13), 8. Foreign Candy cites no decisions so holding, however. Indeed, my own research suggests that most decisions from courts in this Circuit are to the contrary.[5] Here, I believe that a

---

[5] *See AFTG-TG, L.L.C. v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1366-67 (8th Cir. 2012) (although indicating a reluctance to read the concurrence by Justice Breyer in *J. McIntyre Mach., Ltd. v. Nicastro*, ___ U.S. ___, 131 S.Ct. 2780, 2792 (2011), as stating a new rule, holding that a single sale or a few sales to customers in the forum were not enough to establish personal jurisdiction); *Pangaea*, 647 F.3d at 749 n.5 (noting that, in *J. McIntyre*, "where jurisdiction in a products liability action had been premised upon a 'stream of commerce' theory, Justices Breyer and Alito noted in an opinion concurring in the judgment that jurisdiction based on the single sale of a product is insufficient for purposes of conferring personal jurisdiction," and that, "[w]hile the basis for jurisdiction in [the case before the Eighth Circuit Court of Appeals] does not involve the sale of a single product or a stream of commerce theory, the conclusion in the *J. McIntyre* concurrence that a single contact, in certain contexts,

is an insufficient basis for personal jurisdiction, provides relevant guidance"); *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (holding that, where "[o]nly a single purchase order link[ed] the [defendant] to South Dakota," that was not enough to establish personal jurisdiction); *see also Cox v. Generac Power Sys., Inc.*, No. 2:08-CV-04278-NKL, 2009 WL 1664491, *4 (W.D. Mo. June 15, 2009) (holding that the defendant's sale of a single product to a person holding a Missouri CDL was insufficient to establish personal jurisdiction in Missouri); *Quick Point, Inc. v. Excel Eng'g, Inc.*, No. 4:08CV00797ERW, 2009 WL 330837, *3-*5 (E.D. Mo. Feb. 9, 2009) (noting that "courts will generally not exercise personal jurisdiction where the defendant's only contacts with a state arise from purchases initiated by the plaintiff, its lawyers, or its investigators," but concluding that, based on two other shipments of products to other buyers in the forum, not affiliated with the plaintiff, which constituted six percent of the defendant's total sales of that product, with evidence of other solicitations in the forum, were enough to establish personal jurisdiction); *Johnson v. Welsh Equip., Inc.*, 518 F. Supp. 2d 1080, 1091-92 (D. Minn. 2007) (observing that a single sale by the defendant to someone in the forum is more likely to establish the required minimum contacts when the defendant also solicited the sale in some way or actively engaged in negotiating its terms, and holding that the single sale of a truck at issue was not sufficiently related to a tort claim against the defendant to establish personal jurisdiction).

Indeed, in cases in which personal jurisdiction was based on one or only a very few sales by the defendant to customers in the forum state, jurisdiction was not based on a contact manufactured by the plaintiff or anyone affiliated with the plaintiff, and the circumstances showed more than the single sale as the basis for the exercise of personal jurisdiction. *See P.S. Products, Inc. v. Maxsell Corp.*, No. 4:12CV00214 SWW, 2012 WL 3860609, *3 (E.D. Ark. Sept. 5, 2012) (holding, using "the *Zippo* test" that the nature and quality of the defendant's contacts with the forum weighed in favor of exercising personal jurisdiction, where the defendant admitted two sales in the forum, and he had "purposefully availed himself" of the privilege of doing business in the forum "by setting up a website by which residents of [the forum] can and allegedly did purchase alleged copies of products patented by plaintiffs"); *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1021 (D. Minn. 2008) (holding that personal jurisdiction over an out-of-state defendant was proper, where "Elabo sold one of its machines to a company in Minnesota, having first negotiated the price and other terms of the sale with that Minnesota company, knowing that the company was located in Minnesota and would be using the machine in Minnesota. Elabo then put its machine on an airplane and shipped it to Minnesota. Without question, then, Elabo purposefully availed itself of the benefits and privileges of conducting business in Minnesota. And without question, Elabo could

single sale to a representative of the plaintiff that was not by the defendant, but by a third-party retailer, and that involved no negotiation of terms of the sale between a forum resident and the defendant, is an insufficient "quantity" of sales to support personal jurisdiction, even if the sale was of a product allegedly bearing marks and packaging that allegedly infringed the plaintiff's trademarks and copyrights.

Thus, even viewing the facts in the light most favorable to Foreign Candy, Foreign Candy has failed to meet its "minimal" burden of proof to show that this second factor weighs in favor of the exercise of personal jurisdiction over Tropical Paradise in this forum, *see K-V Pharm. Co.*, 648 F.3d at 581-82 (explaining the burden of proof and the court's view of the evidence when facts are controverted on a Rule 12(b)(2) motion, but no evidentiary hearing is held); indeed, this factor also weighs against the exercise of personal jurisdiction.

### c.     *The relationship of the contacts with the cause of action*

The third factor in the five-factor test of personal jurisdiction in this Circuit involves specifically the kinds of considerations that led me to reject the single sale to plaintiff's representative as sufficient contact with the forum for purposes of personal jurisdiction, because the third factor is "the relationship of those contacts with the cause of action." *Myers*, 689 F.3d at 911.  Again, it is this factor that "distinguishes between specific and general [personal] jurisdiction." *Id.*  I agree with Foreign Candy that the sale of a product bearing marks and packaging that allegedly infringed the plaintiff's trademarks and copyrights bears a close relationship to the causes of action. Nevertheless, the sale here was *not* by the defendant, but by an unaffiliated third-party retailer.  Thus, while the sale bears an appropriate relationship to the cause of action, it

---

reasonably have anticipated that if the machine that it shipped to Minnesota for use in Minnesota by a Minnesota company injured a Minnesotan, Elabo would be haled into court in Minnesota.").

is not a pertinent "contact" *by the defendant*, and I have concluded, above, that Tropical Paradise's website does not otherwise establish the required "contacts" with the forum.

Thus, even viewing the facts in the light most favorable to Foreign Candy, Foreign Candy has failed to meet its "minimal" burden of proof to show that this third factor weighs in favor of the exercise of personal jurisdiction over Tropical Paradise in this forum, *see K-V Pharm. Co.*, 648 F.3d at 581-82 (explaining the burden of proof and the court's view of the evidence when facts are controverted on a Rule 12(b)(2) motion, but no evidentiary hearing is held). Instead, this factor weighs heavily against the exercise of personal jurisdiction.

### d. *Interest and convenience of the forum*

The remaining factors in the five-factor test of personal jurisdiction in this Circuit—requiring consideration of the forum state's interest in providing a forum for its residents and the convenience or inconvenience of the forum to the parties—are the less important ones. *Myers*, 689 F.3d at 911. While I agree with Foreign Candy that Iowa has an interest in providing a forum for its residents asserting federal and state law claims of trademark, trade dress, and copyright infringement and unfair competition, and that this forum is more convenient for Foreign Candy, Tropical Paradise is under no obligation to demonstrate that personal jurisdiction over it exists in some other forum, as Foreign Candy seems to contend. Even though Foreign Candy did not identify such a forum, it is highly likely that Massachusetts is a forum with personal jurisdiction over Tropical Paradise, one that would also likely be much more convenient to Tropical Paradise, and one in which it is likely that allegedly infringing acts occurred, because Massachusetts is where Tropical Paradise has its principal place of business. The interest of this forum and its convenience to Foreign Candy simply

29

cannot outweigh Tropical Paradise's lack of contacts with this forum in the personal jurisdiction analysis.

### e. "Effects" in this forum

Foreign Candy argues, apparently in the alternative, that the "effects test" warrants the exercise of personal jurisdiction over Tropical Paradise in this case, because Tropical Paradise has continued infringing activity even after notice from Foreign Candy, from as early as 2009, that Tropical Paradise's activities were causing effects in Iowa by injuring an Iowa resident. This argument is untenable.

The "effects test" was set out in *Calder v. Jones*, 465 U.S. 783 (1984). *See Johnson*, 614 F.3d at 796. The Eighth Circuit Court of Appeals has explained the "effects test" as follows:

> Due process allows a state to assert personal jurisdiction over a defendant based on the in-state effects of defendants' extraterritorial tortious acts only if those acts "(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." *Johnson*, 614 F.3d at 796 (alteration in original) (quoting *Lindgren v. GDT, LLC*, 312 F.Supp.2d 1125, 1132 (S.D.Iowa 2004)).

*Viasystems, Inc.*, 646 F.3d at 594. As the court had previously explained in *Johnson*,

> Additionally, even if the effect of [the defendant's] alleged statement was felt in Missouri, we have used the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state. In *Dakota*, we declined to grant personal jurisdiction solely on the basis of forum state effects from an intentional tort. [*Dakota Indus., Inc.*, 946 F.2d] at 1391 ("In relying on *Calder*, we do not abandon the five-part [*Aftanase*] test.... We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged."). We therefore construe the *Calder* effects test narrowly, and hold

30

> that, absent additional contacts, mere effects in the forum
> state are insufficient to confer personal jurisdiction. *See*
> *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th
> Cir.1992) (per curiam).

*Johnson*, 614 F.3d at 796-97.

Here, as in *Viasystems*, even assuming that Foreign Candy could satisfy factors (1) and (3) of the "effects test," nothing here suggests that Tropical Paradise's allegedly infringing activity was "uniquely or expressly aimed at the forum state," where Tropical Paradise does not, itself, conduct any business and has had no direct sales in or other contacts with Iowa. *See Viasystems, Inc.*, 646 F.3d at 594. Also, as in *Johnson*, where the "effects test" is narrowly construed to require "additional contacts," but where, as explained above, "there are no additional contacts between [Tropical Paradise] and [Iowa] to justify conferring personal jurisdiction," the "effects test" does not require or weigh in favor of the exercise of personal jurisdiction over Tropical Paradise in this forum. *Johnson*, 614 F.3d at 797.

### f. *"Fair play and substantial justice" in the totality of the circumstances*

Finally, due process requires that "[c]ontacts with the forum state must be sufficient that requiring a party to defend an action would not 'offend traditional notions of fair play and substantial justice,'" *Myers*, 689 F.3d at 911 (quoting *International Shoe Co.*, 326 U.S. at 316), and the court's consideration of "'the totality of the circumstances in deciding whether personal jurisdiction exists,'" *id.* at 913 (quoting *K-V Pharm. Co.*, 648 F.3d at 592-93). Where, as here, even viewing the totality of the facts in the light most favorable to Foreign Candy, Foreign Candy has failed to meet its "minimal" burden of proof to show that the balance of the factors weighs in favor of the exercise of personal jurisdiction over Tropical Paradise in this forum. *See K-V Pharm. Co.*, 648 F.3d at 581-82 (explaining the burden of proof and the court's view

of the evidence when facts are controverted on a Rule 12(b)(2) motion, but no evidentiary hearing is held). Tropical Paradise's lack of direct contacts with this forum demonstrates that exercising personal jurisdiction over it in this forum would "offend traditional notions of fair play and substantial justice." *Myers*, 689 F.3d at 911 (internal quotation marks and citations omitted).

Consideration of the relevant factors leads to the conclusion that, on this record, dismissal for lack of personal jurisdiction over Tropical Paradise is appropriate.

### 4.    *Jurisdictional discovery*

#### a.    *Arguments of the parties*

In its Response to the Motion To Dismiss, Foreign Candy argues that, if I determine that it has failed to make a *prima facie* showing of personal jurisdiction, I should grant Foreign Candy the opportunity to conduct jurisdictional discovery. Foreign Candy argues that the facts known to date give rise to additional unknown facts that are solely under the control of Tropical Paradise and that are otherwise difficult, if not impossible, to determine without formal discovery. Foreign Candy argues that only Tropical Paradise has access to information related to its sales efforts and other contacts with Iowa, so that its request for jurisdictional discovery is not frivolous and should be granted.

In its Reply, Tropical Paradise argues that jurisdictional discovery is not appropriate where Foreign Candy has only offered speculation or conclusory assertions about contacts with a forum state. Tropical Paradise argues that it has no contacts with Iowa, that Foreign Candy's arguments to the contrary are specious, leaving it with no basis for establishing personal jurisdiction other than speculation or conclusory assertions; and that discovery would be completely unavailing, because Tropical Paradise has no contacts with Iowa and has had no sales in Iowa for at least ten years. Thus, Tropical Paradise asserts that Foreign Candy is asking for a "fishing expedition."

### b.	Analysis

The Eighth Circuit Court of Appeals has held that "'[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.'" *Viasystems, Inc.*, 646 F.3d at 598 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 n.1 (8th Cir. 2004), in turn quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)).  More specifically, where a defendant offers affidavits denying corporate control over another entity that may have been subject to personal jurisdiction, and the plaintiff fails to rebut those affidavits and offers only speculative and conclusory assertions about any other contacts by the defendant with the forum state, denial of jurisdictional discovery is not an abuse of discretion.  *See Steinbuch v. Cutler*, 518 F.3d at 580, 590 (8th Cir. 2008).  On the other hand, where the plaintiff offers "documentary evidence" in support of allegations of personal jurisdiction, the court abuses its discretion by dismissing the action without permitting the plaintiff to take some jurisdictional discovery.  *Id.* at 589.

Here, Foreign Candy asserted that Tropical Paradise had sufficient contact with this forum, because of an Internet purchase by Foreign Candy's CEO from the website of a third-party retailer, but offered no evidence that Tropical Paradise had any control over or affiliation with the third-party retailer.  In response, Tropical Paradise offered an affidavit averring that CoffeeCow.com, the third-party retailer, is not affiliated in any way with Tropical Paradise.  *See* Defendant's Reply (docket no. 19), Second Affidavit Of Fadi S. Massabni, ¶ 8 ("CoffeeCow is not an affiliate of Tropical Paradise.").  Foreign Candy has not rebutted that affidavit in any way, or even attempted to do so, and has offered nothing but speculative and conclusory assertions that Tropical Paradise might have some other contacts with Iowa, not any documentary evidence that provides any inference of additional contacts that Tropical Paradise might

have with Iowa. Under these circumstances, Tropical Paradise is not entitled to any jurisdictional discovery. *See Viasystems, Inc.*, 646 F.3d at 598; *Steinbruch*, 518 F.3d at 590.

### 5.    Summary

In this case, even viewing the totality of the facts in the light most favorable to Foreign Candy, Foreign Candy has failed to meet its "minimal" burden of proof to show that the balance of the factors weighs in favor of the exercise of personal jurisdiction over Tropical Paradise in this forum. *See K-V Pharm. Co.*, 648 F.3d at 581-82. Foreign Candy has also failed to demonstrate that consideration of that part of Tropical Paradise's Motion To Dismiss seeking dismissal for lack of personal jurisdiction should be stayed so that the parties can conduct jurisdictional discovery. Under these circumstances, that part of Tropical Paradise's Motion To Dismiss seeking dismissal for lack of personal jurisdiction is granted.

## B.    Venue

### 1.    Arguments of the parties

In its Motion To Dismiss, Tropical Paradise seeks dismissal of Foreign Candy's Complaint, in addition or in the alternative, for improper venue, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Tropical Paradise asserts that venue is improper under any subdivision of 28 U.S.C. § 1391, as to Foreign Candy's Lanham Act claims, and that venue in copyright disputes pursuant to 28 U.S.C. § 1400(a) is improper, because that statute has been construed to make venue coextensive with personal jurisdiction, and personal jurisdiction is lacking. In Response, Foreign Candy argues that venue and personal jurisdiction are coextensive, so that venue is proper in this forum for the same reasons that personal jurisdiction is proper.

## 2.    *Analysis*

The parties are correct that, in this case, venue is coextensive with personal jurisdiction.   Under § 1391(b)(1), venue is proper where a defendant "resides," but under § 1391(c)(2), a corporate defendant "resides" where it is subject to personal jurisdiction.   Section 1391(b)(2) is inapplicable, because Foreign Candy does not argue, and I cannot find, that a substantial part of the events or omissions giving rise to Foreign Candy's claims occurred in this judicial district.   Section 1391(b)(3) provides that, if there is no other district where the action may be brought, venue is proper in a district in which the defendant is subject to personal jurisdiction.   The Eighth Circuit Court of Appeals has recognized that, because the statute makes where the defendant "resides" equivalent to where the defendant is subject to personal jurisdiction, "[i]f personal jurisdiction exists at the commencement of the action, then venue is proper under 29 U.S.C. § 1391(b)."   *Dakota Indus., Inc.*, 946 F.3d at 1392.   Here, I concluded, above, that Tropical Paradise is not subject to personal jurisdiction in this district, so that this district is not one in which Tropical Paradise "resides," within the meaning of § 1391(c)(2).   Thus, venue is not proper in this district under § 1391(b)(1).   Similarly, there is no showing that there is no other district in which the action may be brought and, even if I could conclude that there is no other district in which the action may be brought, I concluded, above, that Tropical Paradise is not subject to personal jurisdiction in this district.    Thus, venue is not proper in this district under § 1391(b)(3).

Similarly, § 1400(a), the provision establishing venue in copyright cases, provides that venue is proper "in the district in which the defendant or his agent resides or may be found."   28 U.S.C. § 1400(a).   Courts have construed this provision as also making venue proper only where personal jurisdiction is proper.   *See, e.g., Brayton v. Purcell, L.L.P. v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010); *In re*

*LimitNone, L.L.C.*, 551 F.3d 572, 575 n.1 (7th Cir. 2008) (noting that the definition of "resides" in § 1391(c) is applicable to § 1400(a)); *Palmer v. Braun*, 376 F.3d 1254, 1259-60 (11th Cir. 2004) (equating a district in which a defendant "may be found" under § 1400(a) with "a district which may assert personal jurisdiction over the defendant"). Therefore, the lack of personal jurisdiction over Tropical Paradise is also fatal to venue in this district for Foreign Candy's copyright claim under § 1400(a).

Therefore, in addition or in the alternative, that part of Tropical Paradise's Motion To Dismiss seeking dismissal for lack of proper venue is also granted.

### III.   CONCLUSION

Upon the foregoing, neither personal jurisdiction nor venue is proper in this district. Furthermore, I find that jurisdictional discovery is inappropriate in the circumstances presented here.

THEREFORE,

1.   Tropical Paradise's April 11, 2013, Motion To Dismiss (docket no. 5) is **granted**, and this matter is **dismissed** in its entirety pursuant to Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue; and

2.   Foreign Candy's request for jurisdictional discovery in its May 13, 2013, Response To Motion To Dismiss Complaint (docket no. 13) is also **denied**.

**IT IS SO ORDERED**.

**DATED** this 24th day of June, 2013.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA